IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| THE LYTON US PARTNERSHIP, et al.[1], | : | Case No. 15-10925 (MFW) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Hearing Date: February 24, 2016 at 2:00 p.m. |
| | : | Objection Deadline: February 10, 2016 at 4:00 p.m. |

**TRUSTEE'S MOTION FOR AN ORDER
APPROVING ASSET PURCHASE AGREEMENT**

Jeoffrey L. Burtch, as Chapter 7 Trustee (the "Trustee") for the estates of The Lyton US Partnership (the "Debtor"), and Lyton US1 Corp., Lyton US2 Corp. and Lyton US3 Corp., (the "Related Debtors") moves for the entry of an order, substantially in the form annexed hereto as Exhibit "A" approving an agreement by, between and among the Trustee and IDB Group USA Investments, Inc. ("IDB") (the Trustee and IDB are the "Parties"), for the sale of certain assets of the Debtor's estate. In support of this Motion, the Trustee respectfully states as follows:

**Jurisdiction**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 363, as well as Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

---

[1] The Debtors in these jointly administered cases with the last four digits of their federal tax identification number are as follows: The Lyton US Partnership (1969); Lyton US1 Corp. (1919); Lyton US2 Corp. (2056); and Lyton US3 Corp. (2333). The Debtors' mailing address is 57/63 Line Wall Road, Gibraltar, Great Britain.

## Background

3. On April 30, 2015 (the "Petition Date") the Debtors commenced these cases (the "Bankruptcy Cases") by filing voluntary petitions for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). The Bankruptcy Cases are being jointly administered.

4. Shortly after the Petition Date, Jeoffrey L. Burtch was appointed to serve as the Trustee for the estates of the Debtor and Related Debtors.

5. According to the Debtor's bankruptcy schedule B, the only assets of the Debtor as of the Petition Date are the following: (i) $324,244 held in an escrow account; (ii) 14.825% membership interests in the following five entities: Sahara Hualapai LLC; Queensridge Towers LLC; Great Wash Park LLC; GW SPE Member, Inc.; and GT SPE Member, Inc. (the "Equity Interests"); and (iii) four unsecured promissory notes, as follows: unsecured promissory note payable from Great Wash Park LLC dated April 28, 2006, in the amount of $5,819,697; unsecured promissory note payable from Great Wash Park LLC dated August 30, 2007 in the amount of $4,937,088; unsecured promissory note from Great Wash Park LLC (copy not located) in the amount of $3,847,381; and unsecured promissory note payable from GW Management LLC dated October 17, 2007 in the amount of $857,895 ("collectively the "Promissory Note Claims").

6. The Equity Interests are in three entities that own real estate projects in Las Vegas, Nevada (the "Las Vegas Projects") and two entities that were created as special purpose entities in connection with the Great Wash Park and Queensridge Towers projects.

7. The Related Debtors' schedules reflect that the only asset of each of these entities are claims against and equity interests in the Debtor.

8. As such, the value of the Debtor's and the Related Debtors' assets are tied to the financial condition of the three Las Vegas Projects. The Las Vegas Projects were described by Christopher White, the Debtor's representative at the section 341(a) meeting, as follows: (i) Great Wash Park, a largely completed shopping park; (ii) Queensridge Towers, a planned apartment project with retail; and (iii) Sahara Hualapai (project never completed and turned over to creditor in settlement of litigation).

9. The Debtor estimated the value of the Equity Interests in its schedules at $0. Further, the testimony of Mr. White at the section 341(a) meeting, was that the Equity Interests have no value.

10. After the Trustee's appointment, he undertook, through counsel, an effort to determine how best to liquidate the Equity Interests and Promissory Note Claims. In addition to conducting a Section 341(a) meeting of the Debtor, he, again through counsel, obtained and reviewed financial records and other documents from the Debtor, interviewed Debtor's counsel, had discussions with certain creditors, and interviewed and obtained documents from IDB, the majority investor and largest creditor of the Las Vegas Projects.

11. Through his review of documents and discussions with interested parties, it became apparent that the two remaining Las Vegas Projects have not realized their potential and are burdened by substantial debt senior to the Promissory Note Claims (and, in turn, the Equity Interests).

12. The Trustee reached out separately to one of the largest creditors, and IDB, the majority owner and largest creditor in the Las Vegas Projects, to inquire whether they would have any interest in making an offer to purchase the Equity Interests and the Promissory Note Claims.

13. The Trustee received offers from both parties. After discussions and negotiations with both parties, the Trustee decided to proceed with the offer from IDB to sell the Equity Interests and the Promissory Note Claims to IDB on an "as is/where is" basis, subject to higher and better offers.

14. After arm's length negotiations, the Parties reached an agreement for the sale of the Equity Interests and Promissory Note Claims on the terms and conditions set forth in the Asset Purchase Agreement (the "Agreement"), a copy of which is annexed hereto as Exhibit "B" and incorporated herein by reference.

## Relief Requested

15. By this Motion, the Trustee seeks the entry of an order pursuant to 11 U.S.C. §§ 105 and 363(b), (f), and (m), as well as Federal Rules of Bankruptcy Procedure 6004 and 9019, (a) authorizing the Trustee to sale the Equity Interests and Promissory Note Claims free and clear of all liens, claims, interests, and encumbrances; and (b) approving the terms of the Agreement.

16. The Agreement generally provides as follows:

> A. In exchange for a payment by IDB to the Trustee in the amount of one hundred thousand dollars ($100,000.00) (the "Purchase Price"), the Trustee on behalf of the Estates shall sell, convey, assign, transfer and deliver to IDB the Equity Interests and Promissory Note Claims (defined above).
>
> B. IDB shall deliver the Purchase Price on the second business day after an Order approving the Agreement becomes a final and non-appealable order, or on such other date as the Parties mutually agreed upon in writing (the "Closing Date"). The Purchase Price shall be paid by certified check, or at the Trustee's discretion, by wire transfer of immediately available funds to such account or accounts as the Trustee may reasonably direct by written notice delivered to IDB by the Trustee at least two (2) business days before the Closing Date.
>
> C. The Trustee will assign and transfer to IDB all of the Estates' right, title, and interest in and to the Equity Interests and Promissory Note Claims free and clear of all mortgages, pledges, assessments, security interests, leases, liens, adverse claims, levies, charges or other encumbrances of any

kind, including without limitation all "interests" as used in section 363(f) of the Bankruptcy Code, to the extent permitted under section 363 of the Bankruptcy Code.

D. The assignments, sales, transfers and conveyances hereunder are on an "as is where is" basis, and the Trustee makes no warranties, representations or guarantees of any kind or character, express or implied, with respect to the Equity Interests and Promissory Note Claims, including, without limitation, any warranty that the Promissory Note Claims are collectible.

E. IDB acknowledges that its purchase of the Equity Interests and Promissory Note Claims pursuant to this Agreement is subject to the Trustee's obligation to (i) market the Estates' assets, (ii) provide information to or respond to inquiries from potential bidders, and (iii) solicit competing offers for the Equity Interests and Promissory Note Claims. Further, the Trustee is not providing a release of any claims under the Agreement.

## Authority for Requested Relief

17. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve use, sale or lease, other than in the ordinary course of business, the Court must find "some articulated business justification." *See In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) and *In re Abbotts Dairies of Pa. Inc.*, 788 F. 2d 143 (3d Cir. 1986) (requiring good faith purchasing). Moreover, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

18. Courts have held that transactions should be approved under Section 363(b) of the Bankruptcy Code when they are supported by the sound business judgment of the debtor or trustee, as the case may be. *See In re Martin*, 91 F.3d 389, 395 (3d Cir. 1986); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that transactions should be approved under Section 363(b)(1) when: (a) they are supported by the sound business judgment of a debtor's

management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith.").

19. Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. *See Lionel*, 722 F,2d at 1071. Bankruptcy courts are given substantial discretion in deciding whether to authorize a sale of a debtor's assets outside of the ordinary course of business. *See In re Chateaugay Corp.*, 973 F.2d 141, 144 (2d Cir. 1992).

20. Section 363(f) of the Bankruptcy Code permits the Trustee to sell assets free and clear of all interests which may be asserted against such assets, which any such interests attaching to the net proceeds of the sale, subject to the rights and defenses of the Debtor with respect thereto. As Section 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to Section 363(b), it is only necessary to meet one of the five conditions of Section 363(f). To the extent that there are interests that may be asserted in the assets, the Trustee believes that one or more of the aforementioned conditions have been or can be satisfied.

21. Further, Section 704(a) of the Bankruptcy Code, titled "Duties of trustee" lists as the first express duty of a trustee that he shall "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest[.]"

22. In the Trustee's business judgment, the Purchase Price represents a fair and reasonable price for the Equity Interests and Promissory Note Claims. The transaction and opportunity to solicit alternative bids as contemplated in the Agreement provides the Trustee a valuation and market test for the Equity Interests and the Promissory Note Claims. This allows the

Trustee to accept the best offer for the Equity Interests and Promissory Note Claims, in a timely fashion that will allow him to proceed expeditiously with further administration of the Estates.

23. Based on the foregoing, the Trustee submits that the sale of the assets is a prudent exercise of his business judgment under the circumstances and is in the best interests of the Debtor's estate and its creditors.

### Solicitation of Additional Offers

24. As an additional test of the fairness of the proposed Agreement, the Trustee will consider additional proposals for the assets through the date by which objections are due to this Motion. If an additional proposal is received by the Trustee in writing on or before the objection deadline that the Trustee determines to be higher or otherwise better than the Purchase Price, the Trustee will use the hearing date on the Motion as a status conference to report to the Court on the status of competing offers and his proposed procedure to conduct a prompt auction and return to Court after the auction to approve the sale to the bidder submitting the highest and best offer for the assets.

25. If no additional bids are received by the Trustee, then he will proceed with the hearing as scheduled and request that the Court approve the Agreement for the reasons set forth hereinabove.

### Notice

26. Notice of this Motion has been given to the Debtor, the Office of the United States Trustee, counsel for IDB, all creditors, and all parties requesting notice pursuant to Fed. R. Bankr. P. 2002. The Trustee believes that such notice is adequate under the circumstances and that no other or further notice is necessary.

WHEREFORE, the Trustee respectfully requests that the Court enter the Order, substantially in the form attached hereto as Exhibit "A" granting the relief requested herein, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

COZEN O'CONNOR

Dated: December 28, 2015

_____
Mark E. Felger (DE No. 3919)
Gregory F. Fischer (DE No. 5269)
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
302-295-2000 Telephone
302-295-2013 Fax
mfelger@cozen.com
gfischer@cozen.com

*Special Counsel to Chapter 7 Trustee, Jeoffrey L. Burtch*